# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2023

Lyle W. Cayce
Clerk

No. 23-20191
Summary Calendar

Hilda M. Castanedo Escalon; Estate of Hilda Castanedo; Estate of Emma Diaz,

*Plaintiffs—Appellants*,

*versus*

Trafigura Trading L.L.C.; Trafigura Group Pte Limited; Trafigura Pte Limited,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-659

Before Clement, Duncan, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Appellants are the estates of two Cuban-American decedents and the personal representative of those estates—Hilda Castanedo Escalon. They sued a global commodities-trading company under the Helms-Burton Act, a statute that creates a private right of action against anyone who traffics in

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

property expropriated by the Castro regime, subject to certain limitations. One such limitation is that, for any property expropriated prior to March 12, 1996—the date of the statute's enactment—the U.S. national that owns a claim to such property must have acquired that claim prior to March 12, 1996.

Here, the Castro regime confiscated the decedents' property before March 12, 1996, but the decedents died *after* March 12, 1996, at which point their claims to the property immediately transferred to the sole beneficiary of their estates—Escalon. Accordingly, Escalon alone owns the claims to the confiscated property, and because she acquired the claim *after* March 12, 1996, any Helms-Burton Act action based on the confiscated property is foreclosed. Appellants' argument that the decedents somehow retained ownership of the claims to the confiscated property is, therefore, unavailing, as is Appellants' motion to certify to the Florida Supreme Court immaterial questions about precisely when an heir acquires ownership interests and whether an estate can acquire ownership interests.

Accordingly, we AFFIRM the district court's judgment and DENY Appellants' motion to certify.

## I.

### A.

In 1961, the Fidel Castro regime expropriated, without compensation, a mining business belonging to the Diaz family, who resided in Cuba. Shortly thereafter, in 1962, the Diaz patriarch died, at which point his daughters, Emma Diaz and Hilda Castanedo, inherited his ownership interests in the company. Diaz and Castanedo eventually fled Cuba for the United States, as did Castanedo's daughter—Escalon. The three became naturalized U.S. citizens and lived stateside until Diaz and Castanedo passed away in July 1996 and June 2000, respectively, leaving Escalon as the sole beneficiary of their

estates. Neither Diaz's nor Castanedo's will makes any mention of an event that must occur before their terms vest.

Just before Diaz's death, Congress passed the Cuban Liberty and Democratic Solidarity Act (LIBERTAD), also known as the Helms-Burton Act ("HBA"), 22 U.S.C. § 6021, *et seq.*, which sought to deter the unauthorized commercial exploitation of property in Cuba. To that end, Title III of the HBA created a private right of action against "any person that . . . traffics in property which was confiscated by the Cuban Government" without authorization from the U.S. national who owns the claim to such property. 22 U.S.C. § 6082(a)(1)(A). A person "traffics" in this context if he or she "engages in a commercial activity using or otherwise benefiting from confiscated property," or "directs," "participates in," or "profits from" another person's trafficking. *Id.* § 6023(13)(A). Crucially, the HBA also provides that, if the property in question was "confiscated before March 12, 1996," the "United States national who owns the claim to such property" may "bring an action under [Title III]" *only if* "such national acquires ownership of the claim before March 12, 1996." *Id.* § 6082(a)(4)(B).

Title III also authorizes the President to suspend the private right of action for six-month increments, however, if doing so serves U.S. national interests. *See id.* § 6085(c)(1)(B), (c)(2). Upon the HBA's enactment, President Clinton suspended the cause of action, and his successors continued to do so until May 2, 2019, when President Trump lifted the suspension. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 919–20 (11th Cir. 2023). To date, President Biden has not reinstituted the suspension, so Title III's private right of action remains available to qualified parties. *Id.*

## B.

In 2019, Escalon, through counsel, sent several pre-litigation letters threatening a Title III claim against the Trafigura Group. Trafigura operates

a global commodities-trading business, including a mining operation conducted through a joint venture with the Cuban government that uses property formerly possessed by the Diaz family. In response to the pre-litigation letters, Trafigura supposedly advised Escalon of a fatal defect in her Title III claim, namely that it was untimely because Escalon had not acquired ownership of the claim until after March 12, 1996.

In July 2020—two decades after Castanedo and Diaz died—Escalon went to Florida probate court where she petitioned to admit Castanedo's and Diaz's wills to probate and to qualify as the estates' personal representative. Escalon listed as each estate's sole asset a "[r]ight to pursue a cause of action pursuant to [the Helms-Burton Act]."[1] The Miami-Dade County Probate Court admitted the wills to probate and appointed Escalon as the personal representative of Castanedo's and Diaz's (hereinafter "Decedents") estates. Shortly thereafter, Escalon's counsel contacted Trafigura to say that they now had "a very different case than what [they had] presented" in 2019 because the purported claimants were now "the Estates of Hilda Castanedo . . . and Emma Diaz" rather than Escalon herself.

Then, Decedents' estates and Escalon—solely in her capacity as representative of the estates—brought suit in the United States District Court for the Southern District of Texas.[2] Appellants named as Defendants

---

[1] Appellants appear at times to conflate "claim" in the property sense (*i.e.*, an ownership interest in some property that one can assert) and "claim" in the cause-of-action sense. Here, Florida wills-and-estates law governs the question of who owns a claim to the confiscated property, and federal law—the HBA and interpretive case law—governs the question of who is qualified to bring a Title III action and under what circumstances. One can have a claim to property without being entitled to bring an HBA claim, and the mere fact that one lists a right to sue as an asset of an estate does not make it so.

[2] We note that estates lack the capacity to sue in this instance. *See* Fed. R. Civ. P. 17(b)(3) (the law of the state of forum court governs whether estates have the capacity

No. 23-20191

three Trafigura entities.[3] They alleged that Trafigura was trafficking in property that the Cuban government had confiscated and thus brought a Title III action as well as a civil-conspiracy claim against Trafigura. Trafigura moved to dismiss on multiple grounds, including lack of personal jurisdiction over two of the sued entities, lack of injury traceable to the third entity, failure to plead actual ownership interests in the confiscated property or knowing and intentional trafficking, and failure to state a civil-conspiracy claim. Trafigura also argued that the Title III claim was untimely because any right to the confiscated property would have vested either in Escalon personally or the estates themselves upon Castanedo's and Diaz's deaths, both of which occurred after March 12, 1996.

The district court granted Trafigura's motions to dismiss, holding that, under Florida law, "any rights [that Castanedo and Diaz] had to the Confiscated Property vested in Escalon on the dates of their deaths." And because Escalon had this vested right upon the testators' deaths, the estates lacked any "ownership interest in the Confiscated Property." The trial court further reasoned that, even if Castanedo's and Diaz's ownership interests had not vested in Escalon upon their deaths, "their purported claims to the Confiscated Property were not part of their respective Estates before the

_____

to sue or be sued); *Aguirre v. City of San Antonio*, 995 F.3d 395, 423 (5th Cir. 2021) ("'[A] deceased's estate is not a legal entity and may not properly sue or be sued as such." (citing *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975))). Nevertheless, Trafigura has failed, so far as we are aware, to raise the lack-of-capacity defense at any point in this litigation. Because lack of capacity, unlike standing, is a non-jurisdictional defect, it may be waived. *See Bankston v. Burch*, 27 F.3d 164, 167 (5th Cir. 1994). And failure to brief a non-jurisdictional issue on appeal means waiver thereof. *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004). Thus, Trafigura waived any lack-of-capacity defense, and we proceed accordingly.

[3] Specifically, they sued Trafigura Group PTE Ltd., Trafigura PTE Ltd., and Trafigura Trading, LLC. The specific nature of these entities and their relationship to Trafigura generally is not relevant to the instant appeal.

statutory cutoff" because Diaz and Castanedo died *after* March 12, 1996. The district court therefore dismissed the Title III claims and denied reconsideration.[4] Decedents' estates and Escalon, solely in her capacity as personal representative of the estates, now appeal and move to certify questions of law to the Supreme Court of Florida.

## II.

We review *de novo* a district court's dismissal under Rule 12(b)(6). *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019). Whereas we accept as true all well pleaded facts, construing all reasonable inferences in the light most favorable to the plaintiff, we do not accept as true legal conclusions. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020).

## III.

It is undisputed that Decedents acquired ownership of any claims they had to the confiscated property prior to March 12, 1996, and retained any such ownership until their deaths on July 27, 1996, and June 6, 2000. At issue is (A) whether Escalon later acquired Decedents' claims to the confiscated property and (B) if not, whether Decedents' estates or the personal representative thereof own the claims to the confiscated property.

## A.

Under Florida law, "[t]he death of the testator is the event that vests the right to devises" unless the will contains language to the contrary. FLA. STAT. § 732.514. An ownership interest in property constitutes "property" for purposes of wills and estates. *Id.* § 731.201(32). And the inheritance of

---

[4] The district court also dismissed the civil-conspiracy claim because the Title III claim was "the only underlying claim" that could have supported the derivative tort of civil conspiracy. The district court thus did not reach the Rule 12(b)(6) basis for dismissal, nor did it reach the Rule 12(b)(1) basis.

claims to confiscated property constitutes "acqui[sition]" thereof for purposes of Title III actions. *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 336 (5th Cir. 2021)*, cert. denied*, 142 S. Ct. 863 (2022).[5]

In *Glen*, the plaintiff inherited a claim to property that the Cuban government had confiscated prior to March 12, 1996, upon his aunt's death in 1999. *Id.* at 333–34. We held that, when an individual inherits a claim to confiscated property *after* March 12, 1996, that individual has indeed acquired the claim to such property but is time-barred from bringing a Title III action under the HBA's plain text. *Id.* at 336.

Here, like in *Glen*, Escalon inherited, and thus acquired, the claims to the confiscated property upon the decedents' deaths. Further like in *Glen*, those deaths occurred after March 12, 1996, thus rendering untimely any Title III action based on ownership interests in the confiscated property that now belong to the inheritor.

Appellants argue that Escalon, as the estates' personal representative, "was properly appointed to stand in Emma's and Hilda's shoes and bring *their claims* as part of the administration of their Estates." But the Title III claims are not "their[s]" to bring. Decedents' wills were executed and admitted to probate in Florida. Both wills bequeath all property to Escalon, and neither will states that any event must occur before its terms vest. Therefore, any rights that Diaz and Castanedo had to the confiscated

---

[5] We also noted in *Glen* that every court to address this issue has ruled the same way. 7 F.4th at 336–37 (collecting cases).

property vested in Escalon on the dates of their deaths—July 27, 1996, and June 6, 2000, respectively.[6]

Nothing in the probate order or Florida law undermines this inescapable fact. Probating a will has no impact on the vesting of property rights conveyed therein. *See Rice v. Greene*, 941 So. 2d 1230, 1231–32 (Fla. Dist. Ct. App. 2006). Rather, it is simply a means of validating the will for purposes of enforcement. *Id.* And appointing a representative is simply a means of administering the distribution of the estate's assets, which must be done consistent with the will's text, where applicable, and the relevant law.

Thus, under the HBA and *Glen*, (1) Escalon acquired any claims that Decedents had to the confiscated property on the dates of their deaths, (2) Escalon alone owns any such claims, and (3) any Title III action concerning those claims would be time-barred under the HBA's plain text.

**B.**

Because we conclude that Escalon alone owns the claims to the confiscated property, the second question presented—whether Decedents' estates or their personal representative own the claim to the confiscated property—is moot. Likewise, the two issues that Appellants moved us to certify to the Florida Supreme Court—(1) whether an heir acquires ownership of a decedent's claim at the date of death, and (2) whether an estate is capable of acquiring ownership of a decedent's claim—are

---

[6] Under Title III, "acquisition" means to "gain possession or control of; to get or to obtain." *Glen*, 7 F.4th at 336 (quoting *Acquire*, BLACK'S LAW DICTIONARY 29 (11th ed. 2019)). Even assuming that Appellants are correct that Escalon has not yet technically *acquired* the claims to property because probate is ongoing, Appellants' arguments still fail because, regardless of the precise date on which Escalon acquires the claims, Escalon alone is entitled to the ownership interests in the confiscated property, and her acquisition thereof will necessarily be untimely for purposes of bringing a Title III action.

No. 23-20191

immaterial: in light of Decedents' wills and the applicable law, Appellants do not, and have never, owned the claims to the confiscated property, so their Title III action is foreclosed.[7]

## IV.

For the foregoing reasons, we AFFIRM the district court's grant of Rule 12(b)(6) dismissal and DENY Appellants' motion to certify.

---

[7] We note once again that Escalon is a plaintiff in this action only in her capacity as personal representative of Decedents' estates and not in her personal capacity.